UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


BYRON JACOB SPENCER,

       Petitioner,

v.                              Case No. 3:14-cv-589-J-39PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, AND FLORIDA
ATTORNEY GENERAL,

       Respondents.

_____

**ORDER**

**I.  INTRODUCTION**

    Petitioner Byron Jacob Spencer challenges a 2008 Duval County conviction for: count one, armed robbery; count two, armed burglary; count three, aggravated battery; count four, aggravated fleeing or attempting to elude a law enforcement officer; count five, grand theft auto; and count six, possession of a firearm by a juvenile delinquent found to have committed a felony act.  See Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1).  In the Petition, he raises nine grounds for habeas relief: (1) ineffective assistance of counsel for failure to object to prosecutorial misconduct during opening and closing arguments when the state bolstered the credibility of a state's witness: Warnell Brown; (2) the ineffective assistance of counsel for failure to object to prosecutorial misconduct by the state inferring that testimony of

officers was believable because of their status as police officers; (3) the ineffective assistance of counsel for failure to object to prosecutorial misconduct in erroneously telling the jury that Petitioner had consciousness of guilt of a crime that he had committed before fleeing or attempting to elude; (4) the ineffective assistance of counsel for failure to object to prosecutorial misconduct in deceiving the jury with a false presumption about the victim; (5) the ineffective assistance of counsel for failure to properly seek to suppress Warnell Brown's testimony; (6) prosecutorial misconduct for informing the jury that they could not return a verdict based on a lesser included offense of fleeing and attempting to elude; (7) ineffective assistance of counsel for failure to introduce evidence to the jury that may have allowed for acquittal; (8) a claim that convictions and sentences for grand theft and robbery violate the proscription against double jeopardy; and (9) prosecutorial misconduct in informing the jury that Petitioner had consciousness of guilt of a crime that he had committed prior to the fleeing and attempting to elude.

Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 12). In support of their Response, they submitted

- 2 -

an Appendix (Doc. 12).[1]  Respondents urge this Court to deny the
Petition.  Response at 16-54.

As previously referenced, Petitioner raises several grounds of
ineffective assistance of counsel.  This Court must be mindful that
in order to prevail on this Sixth Amendment claim, Petitioner must
satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>,
466 U.S. 668, 688 (1984), requiring that he show both deficient
performance (counsel's representation fell below an objective
standard of reasonableness) and prejudice (there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different).  The Court
will address all nine grounds, <u>See</u> <u>Clisby v. Jones</u>, 960 F.2d 925,
936 (11th Cir. 1992), but no evidentiary proceedings are required
in this Court.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996
(AEDPA) governs a state prisoner's federal petition for habeas
corpus. See 28 U.S.C. § 2254; <u>Ledford v. Warden, Ga. Diagnostic &
Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>petition</u>

---

[1] The Court hereinafter refers to the exhibits contained in
the Appendix as "Ex."  Where provided, the page numbers referenced
in this opinion are the Bates stamp numbers at the bottom of each
page of the Appendix.  Otherwise, the page number on the particular
document will be referenced.  The Court will reference the page
numbers assigned by the electronic docketing system where
applicable.  Petitioner filed a Notice (Doc. 14) stating that he
did not intend to file a reply.  <u>See</u> Order (Doc. 5).

for cert. filed, – U.S. – (U.S. Oct. 14, 2016) (No. 16-6444).
"'The purpose of AEDPA is to ensure that federal habeas relief
functions as a guard against extreme malfunctions in the state
criminal justice systems, and not as a means of error correction.'"
Id. (quoting Greene v. Fisher, 132 S.Ct. 38, 43 (2011)).

> Under AEDPA, when a state court has
> adjudicated the petitioner's claim on the
> merits, a federal court may not grant habeas
> relief unless the state court's decision was
> "contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States," 28 U.S.C. § 2254(d)(1), or
> "was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceeding," id. §
> 2254(d)(2). A state court's factual findings
> are presumed correct unless rebutted by clear
> and convincing evidence.[2] Id. § 2254(e)(1);
> Ferrell v. Hall, 640 F.3d 1199, 1223 (11th
> Cir. 2011).
>
> ..."It bears repeating that even a strong case
> for relief does not mean the state court's
> contrary conclusion was unreasonable."
> [Harrington v. Richter, 562 U.S. 86, 101
> (2011)] (citing Lockyer v. Andrade, 538 U.S.
> 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144
> (2003)). The Supreme Court has repeatedly
> instructed lower federal courts that an
> unreasonable application of law requires more
> than mere error or even clear error. See,
> e.g., Mitchell v. Esparza, 540 U.S. 12, 18,
> 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Lockyer,
> 538 U.S. at 75 ("The gloss of clear error
> fails to give proper deference to state courts

---

[2] "This presumption of correctness applies equally to factual
determinations made by the state trial and appellate courts." Pope
v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012)
(quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert.
denied, 133 S.Ct. 1625 (2013).

> by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013), <u>cert</u>. <u>denied</u>, 135 S.Ct. 67 (2014).

In applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits. <u>See</u> <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), <u>petition</u> <u>for</u> <u>cert</u>. <u>filed</u>, - U.S. - (U.S. Nov. 10, 2016) (No. 16-6855); <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Richter</u>, 562 U.S. at 99; <u>see</u> <u>also</u> <u>Johnson v. Williams</u>, 133 S.Ct. 1088, 1096 (2013).

Where the last adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no reasonable basis for the state court to deny relief.'" <u>Wilson</u>, 834 F.3d at 1235 (quoting <u>Richter</u>, 562 U.S. at 98). "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision of [the] Court." <u>Richter</u>, 562 U.S. at 102; <u>see</u> <u>also</u> <u>Wilson</u>, 834 F.3d at 1235; <u>Marshall</u>, 828 F.3d at 1285.   To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal habeas court is not limited to assessing the reasoning of the lower court.   <u>Wilson</u>, 834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," <u>Renico</u> [<u>v. Lett</u>, 449 U.S. 766, 733 (2010)] (quoting [<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)] ), and presume that it "follow[ed] the law," [<u>Woods v. Donald</u>, --- U.S. ----, 135 U.S. 1372, 1376 (2015)] (quoting <u>Visciotti</u>, 537 U.S. at 24).

<u>Wilson</u> at 1238; <u>see</u> <u>also</u> <u>Williams</u>, 133 S.Ct. at 1101 (Scalia, J., concurring).

### III.   PROCEDURAL HISTORY

Respondents provide a brief procedural history in their Response.   Response at 2-7.   Petitioner does not challenge their rendition of the procedural history.   Notice (Doc. 14).

### IV.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### A.  Ground One

In his first ground, Petitioner raises a claim of ineffective assistance of counsel for failure to object to prosecutorial

- 6 -

misconduct during opening and closing arguments when the state bolstered the credibility of a state's witness: Warnell Brown. Petition at 6. Petitioner exhausted this ground by raising it in his Motion for Post Conviction Relief (3.850) (Rule 3.850 motion). Ex. N at 7-12. The trial court denied relief, id. at 40-41, and the First District Court of Appeal per curiam affirmed. Ex. Q.

Initially, the circuit court set forth the applicable two-pronged Strickland standard as a preface to addressing the multiple claims of ineffective assistance of counsel. Ex. N at 39-40. The court also recognized that many of the claims raised in the motion alleged ineffective assistance of counsel for failure to object to multiple instances of alleged prosecutorial misconduct. Id. at 39. The court explained:

> In matters related to postconviction relief due to prosecutorial misconduct, the Defendant must show "the comments must either deprive the Defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to required a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than it would have otherwise.

Id. at 40 (citations omitted).

As noted by Respondents, the circuit court identified the correct legal standard, referencing Strickland. It then addressed the particular allegations raised in ground one concerning the State Attorney improperly vouching for the truthfulness of the witness, Warnell Brown. The court noted that Petitioner complained

of two infractions in the state's opening statement: (1) the statement that the witness has something important to say, and (2) the statement that the witness is going to be truthful and is going to tell the truth.  Ex. N at 40.

With regard to the first statement, the court rejected the argument that it fundamentally tainted the proceedings or deprived Petitioner of a fair and impartial trial.  Id.  With regard to the second statement, the court, in reaching its conclusion, undertook "a full reading" of the statement, considering the statement in context.  Id.  Once it had done so, the court found "it was a rhetorical device used by the State to turn the Defendant's own words spoken to Mr. Brown to 'be true, don't be a snitch.'"  Id. Thus, the court concluded, the statement was not made in isolation, but rather, as a counterpoint to the Defendant's request to Mr. Brown to remain "true" to him by not helping the police.  Id.  As such, the court found the statement did not deprive Petitioner of a fair and impartial trial, and counsel's performance was not deficient in failing to object to the prosecutor's statement.  Id. at 40-41.

The court concluded that counsel's performance was not deficient under Strickland and denied the claim raised in the first ground of the Rule 3.850 motion.  The First District Court of Appeal (1st DCA) affirmed.  Its adjudication on the merits is unaccompanied by an explanation.  Thus, the Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence

- 8 -

of any indication or state-law procedural principles to the contrary. Now it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. If he fails to accomplish this task, he cannot prevail on ground one.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. See Response at 18-22. Indeed, deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Given due consideration, its decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. As such, ground one is due to be denied.

### B.  Ground Two

In his second ground, Petitioner contends that his counsel was ineffective for failure to object to prosecutorial misconduct by the state inferring that testimony of officers was believable because of their status as police officers. Petition at 22. Petitioner exhausted this ground by raising it in ground two of his Rule 3.850 motion. Ex. P at 12-14. The trial court denied relief, id. at 41, and the 1st DCA affirmed per curiam. Ex. Q.

In this ground, Petitioner complains of misconduct during closing arguments. The circuit court referenced the alleged instances of misconduct: the first being the comment, "[t]hose

- 9 -

were [Officer Moon's] words on the stand[,]" and the second being the statement, "[y]ou're to rely on what Officer Moon told you." Ex. N at 41.  The circuit court determined that these comments were proper, and therefore, counsel could not be ineffective for failing to object to these arguments.  Id. (citing Rogers v. State, 957 So.2d 539, 549 (Fla. 2007) (as modified on denial of rehearing)).

In this instance, the court opined that the State Attorney "was seeking to correct any perception [sic] the jury may have regarding his summation of the evidence." Id.  In fact, the State Attorney reminded the jury to rely on the testimony of the witnesses, like Officer Moon, and to recognize that the State Attorney's opening statements and comments were not evidence.  Id.

The particular statements at issue were contained in the following portion of the closing argument:

> During the course of fleeing or attempting to elude Byron Spencer drove at a high speed or any manner demonstrating a wanton disregard for the safety of persons or property.  Officer Moon told you that he remembers his vehicle going between 75 miles per hour but under 100 miles per hour.  **Those were his words on the stand.**  The judge will instruct you during the course of this trial in opening statement if I'm [sic] made any statements, you're to rely on your memory, what I say is not evidence.  **You're to rely on what Officer Moon told you.**  He said 75 to 100 miles an hour.  Told you that he used the turn lane and that other cars, I tried to make notes, members of the jury, other cars took evasive action.  And that he was taking a curve at high speeds and that he was using the turn lane and he was using the shoulder.  That he ran red lights.  That he ran stop signs, one stop sign in particular he said he ran it

almost 70 to 75 miles per hour.  All of this
during rush-hour traffic on a week day.

Ex. F at 586-87 (emphasis added).

After reviewing these statements in context, the court held:

In this view, the comments of the State
Attorney during his closing argument were
proper and therefore the absence of an
objection by the Defendant's counsel was not
deficient.  Rogers, supra.  Furthermore, the
statements, on their face, did not
"fundamentally taint" the proceedings or
deprive the Defendant of a fair and impartial
trial."  Walls, at 1167.  As a result, the
Defendant has not adequately alleged a
deficient performance by his counsel and no
relief is warranted.  Reaves, supra., [sic].

Ex. N at 41.

Petitioner contends that the prosecutor bolstered the
credibility of the officers by referring to them as "duly
authorized law enforcement officers."  This did not constitute
improper bolstering as the court's instructions themselves referred
to the officers as "duly authorized law enforcement officer[s]."
Ex. F at 632.  Specifically, the court charged the jury with the
following:

To prove the crime of fleeing to elude a
law enforcement officer the State must prove
the following three elements beyond a
reasonable doubt, Byron Spencer was operating
a vehicle upon a street or highway in Florida,
number two, **a duly authorized law enforcement
officer** ordered the defendant to stop or
remain stopped, and number three, Byron
Spencer knowing he had been duly, I'm sorry,
knowing he had been directed to stop by **a duly
authorized law enforcement officer** willfully
refused or failed to stop the vehicle in
compliance with the order.

- 11 -

Id. at 632-33 (emphasis added).

As previously noted, the circuit court, in its decision denying the Rule 3.850 motion, recognized the applicable two-pronged Strickland standard before addressing the multiple claims of ineffective assistance of counsel. Ex. N at 39-40. The court found Petitioner did not demonstrate deficient performance. Id. at 41. Since both prongs of the Strickland test must be met, this Court need not address the prejudice prong. Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, . . ., or vice versa."), cert. denied, 531 U.S. 1017 (2000).

Of importance, the 1st DCA affirmed the decision of the circuit court in denying this ground, and this Court will presume that the state court adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Since the last adjudication on the merits is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed in this regard.

Upon review of the entire record, defense counsel did not perform deficiently. There is a reasonable basis for the state court to deny relief; therefore, the denial must be given deference. The 1st DCA's decision is not inconsistent with Supreme

- 12 -

Court precedent, including <u>Stickland</u> and its progeny.  Thus, the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.  Accordingly, ground two is due to be denied.

### C.  Ground Three

In the third ground, Petitioner raises a claim of ineffective assistance of counsel for failure to object to prosecutorial misconduct in erroneously telling the jury that Petitioner had consciousness of guilt of a crime that he had committed before fleeing or attempting to elude.  Petition at 19.  Petitioner exhausted this ground by raising it in ground three of his Rule 3.850 motion.  Ex. N at 14-16.  The trial court denied relief, <u>id</u>. at 41-42, and the 1st DCA affirmed the circuit court's decision. Ex. Q.

During closing argument, the prosecutor discussed the elements of grand theft auto.  Ex. F at 611.  He then stated:

> And of course, the flight not just the crime itself, and the fleeing is a crime but it's also consciousness of guilt.  Why would he do that high speed chase?  Because he's afraid of a police officer stopping him in broad daylight in rush-hour traffic with other officers around and lots of people?  No, he did it because he knew he was in a stolen car and he had to get away.  Why else would he hide in the water?  Not because Mr. Brown is being tased many times, he told you I was tased once.  He didn't say many times.

<u>Id</u>. at 612.

Apparently, Petitioner is contending that his counsel was ineffective for failing to object to the prosecutor's comment, during closing argument, that consciousness of guilt may be inferred from Petitioner's flight to elude capture.  Before addressing this ground, the circuit court succinctly summarized Petitioner's claim:

> In Ground Three, the Defendant specifically alleges again that his attorney was deficient for failing to object to the prosecutor's misconduct during closing arguments.  The Defendant finds the State Attorney's comments to the jury are impermissible where he says, regarding the elements of Count IV - aggravated fleeing or attempting to elude a law enforcement officer: "The flight is not just the crime itself, and the fleeing is a crime but it's also a consciousness of guilt."  Exhibit C at page[s] 611-612.  The Defendant asserts that, in the absence of jury instructions, it was improper for the State to infer at the closing argument that consciousness of guilt can be inferred from his flight to elude capture.

Ex. N at 41.

The circuit court considered this claim of ineffective assistance of counsel and noted that Petitioner failed to reference any authority for the proposition that there must be a specific instruction before the panel can infer consciousness of guilt based on flight.  Id. at 41-42.  The court found it was proper for the prosecutor to ask the jury to infer consciousness of guilt based on flight, noting that Florida law provides that evidence of flight is admissible to infer consciousness of guilt if there is sufficient evidence to demonstrate that the defendant fled to avoid

prosecution.  Id. at 42.  Thus, finding the prosecutor's comments proper based on the wealth of evidence presented at trial concerning Petitioner's flight to avoid prosecution, the court held that the related comments during closing argument were entirely proper, and there was no deficiency on the part of counsel in failing to object to such proper comments.  Id.  Finally, the court determined that the prosecutor's closing argument did not deprive Petitioner of a fair and impartial trial.  Id.

The circuit rejected Petitioner's claim for relief, finding no deficient performance by counsel.  Id.   The 1st DCA affirmed.  Ex. Ex. Q.  With regard to this claim of ineffective assistance of counsel, AEDPA deference should be given to the state court's decision.  The state court's ruling is well-supported by the record and by controlling case law, Strickland and its progeny. Petitioner raised the issue in his post conviction motion, the circuit court denied the motion, and the appellate court affirmed. The Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground three.

### D.  Ground Four

In ground four, Petitioner raises a claim of ineffective assistance of counsel for the failure to object to prosecutorial misconduct in deceiving the jury with a false presumption about the victim.  Petition at 24.  He exhausted his state court remedies by

raising this ground in his Rule 3.850 motion as ground four.  Ex. N at 17-19.  The circuit court denied this ground.  <u>Id</u>. at 42.  The 1st DCA affirmed per curiam.  Ex. Q.

Petitioner states that over the prosecutor's objection, defense counsel was not allowed to use the medical report showing the victim's prior use of drugs.  Petition at 24; <u>see</u> Ex. F at 174-78.  Upon review, however, there was much more to the court's ruling.  The court specifically said that it would not deny the defense the opportunity to use the information from the report in cross examination.  <u>Id</u>. at 179.  The court held that, because victim admitted using drugs in the past, "I think Mr. Falcon would be able to at least ask him were you under the influence of marijuana that night."  <u>Id</u>.

Petitioner also complains that the state "set up a false presumption" that, as a result of the assault, the victim used drugs, endearing sympathy for the victim.  Petition at 24.  Upon review of the closing argument, the prosecutor's statements concerning the victim's drug use was neither misleading or inaccurate.  In pertinent part, the prosecutor said:

> You may not like Mr. Thigpen, you don't have to like Mr. Thigpen, he told you, you know, no one is asking you to take this man home to dinner but I committed a crime, I had cocaine, I like to mix cocaine with my pot and smoke it.  That may offend you and that can offend you.  He even told you in the past did I try my hand at being a drug dealer?  I did, I tried to sell some pot and I wasn't any good at it, so I went back to school and got a job. That may offend you and that certainly can

offend you.    No one is asking you to like
someone who has sold drugs, but he was very
honest with you.

. . . .

The last thing I'm going to say about Mr.
Thigpen and I told you, you don't have to like
him but remember the State of Florida did not
choose him, did not choose the officers.  This
man (indicating) right here, he chose the
date, he chose the place, he chose the victim,
and on September 7th, he chose when he was
going to run and therefore which officers were
involved.

So if you don't like the victim, you hold
it against this man (indicating) cause he
chose the victim, not the State of Florida.

Ex. F at 607-608, 610.

Attorneys are permitted wide latitude in their closing
arguments.  Hammond v. Hall, 586 F.3d 1289, 1335 (11th Cir. 2009)
(finding the Georgia court reasonably applied Strickland in denying
a claim of ineffective assistance of counsel because the petitioner
did not establish the action of counsel (failing to move for a
mistrial based on prosecutorial misconduct) outside the wide range
of reasonable professional assistance), cert. denied, 562 U.S. 1145
(2011).    However, attorneys should not make "[i]mproper
suggestions, insinuations, or assertions" that are intended to
mislead the jury or appeal to passions or prejudices during closing
arguments.  United States v. Hope, 608 F. App'x 831, 840 (11th Cir.
2015) (per curiam).

Here, defense counsel was not ineffective for failure to
object to the prosecutor's remarks.  These remarks did not deceive

- 17 -

the jury.  Reviewing the state's closing argument, there is nothing before the Court which suggests that the prosecutor told the jury that due to the assault on the victim, the victim was led to use drugs.  In fact, the opposite is true.  The prosecutor painted the picture of an unsympathetic victim, a drug user and drug dealer, and asked the jury to follow the law despite the fact that the victim was both a drug user and dealer, and not a particularly likeable or admirable victim.  Under these circumstances, defense counsel's performance cannot be deemed deficient.  Furthermore, Petitioner was not prejudiced by a lack of an objection because the prosecutor's comments never inferred that it was the Petitioner's fault that the victim began to use drugs after the assault.

On this record, Petitioner has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance for failing to object to these statements.  Even assuming deficient performance by his counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had objected or moved for a mistrial based on the prosecutor's alleged improper comments.  Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

In the alternative, the Court will give deference to the circuit court's decision that Petitioner failed to demonstrate

deficient performance by counsel.[3]  Ex. N at 42.  As the Petitioner failed to demonstrate the deficient performance prong of the Strickland standard, it is unnecessary to delve into the other prong of the Strickland standard for this claim.  The 1st DCA affirmed.

With regard to this claim of ineffective assistance of counsel, AEDPA deference should be given to the state court's decision.  The state court's ruling is well-supported by the record and by controlling case law, Strickland and its progeny. Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed. The Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground four.

### E.  Ground Five

In his fifth ground, Petitioner claims he received the ineffective assistance of counsel due to counsel's failure to properly seek to suppress Warnell Brown's testimony.  Petition at 26.  Petitioner raised this issue in ground five of his Rule 3.850

---

[3] The Court is reluctant to rely solely on deference because the circuit court stated that it could not find any mention of the victim's drug abuse in the state's closing argument; however, the court's inability to find the reference is apparently based on Petitioner's failure to pinpoint the drug references by providing relevant citations to the transcript of the closing argument.  In an abundance of caution, this Court will give AEDPA deference, in the alternative.

motion.   Ex. N at 19-25.   The circuit court denied this ground, finding it failed under the Strickland standard.   Id. at 43.

The circuit court recognized that defense counsel made a concerted effort to suppress the jailhouse conversations between Petitioner and witness Brown pre-trial.   Id.   The court denied counsel's motion to exclude the incriminating statements.   Id. Although defense counsel's efforts were unsuccessful, his performance was not deficient.   Id.   Moreover, the suppression issue was properly preserved and could have been raised on direct appeal, further evincing effective performance by counsel.   Id.

The 1st DCA affirmed this decision.   Ex. Q.   There is a reasonable basis for the court to deny relief, and this decision must be given deference.   The 1st DCA's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.

The record supports the conclusion that counsel's performance was not deficient.   Defense counsel presented extensive argument and played the video recording of Brown's conversation with a police officer.   Ex. D at 138-71.   The court, however, after conducting a hearing, held that Brown's testimony would be allowed. Id. at 169-171.   The court said:

> All right.   At this time let me make a
> couple of observations, I guess, for the
> record.   First, I think this is in the nature

- 20 -

of a motion to suppress which typically by the
rules of contemplated prior to jury selection
but I have, I guess, through consent agreed to
do that today which means we're catching a
little bit of it on the fly.

But at this time, if I understand the
argument of the defense, is that Brown became
an agent of the State and was allowed to
interrogate Spencer after invocation of his
right to counsel.  I don't believe there is
any evidence shown first that is sufficient to
show that Brown had been explicitly or
implicitly made to be an agent of the State,
number one.

Number two, I also find that there was no
reasonable expectation of privacy based on the
-- at least the recitation or the knowledge at
this point of Spencer that he was being
videotaped or audiotaped while in the
interrogation room.

. . . .

Now, if Mr. Brown testifies otherwise,
then that may not be that compelling a point
to rely to base my ruling on, but as it sits
now that's what it sounds like, is Brown said
Spencer initiated these conversations.

For those reasons and I appreciate you
making the record and I believe I understand
your argument, but at this time I'm going to
deny the motion to suppress or the motion in
limine to prohibit Brown from testifying as to
the statements made by Spencer.

Id.  Defense counsel renewed his objection before his opening

statement and asked for a standing objection.  Id. at 197.  The

court granted this request.  Id.

When considering the claim of ineffective assistance of

counsel, this Court must try to eliminate the distorting effects of

hindsight, as counseled to do so in Strickland, 466 U.S. at 689.

The record shows defense counsel filed a motion, presented argument and the recording, renewed his objection, and asked for a standing objection to the introduction of Brown's testimony.  He did not prevail on his motion, however, he renewed his objection.  Under these circumstances, counsel's performance was not deficient and Petitioner is not entitled to habeas relief.

### F.  Ground Six

In his sixth ground for habeas relief, Petitioner raises a claim of prosecutorial misconduct for informing the jury that they could not return a verdict based on a lesser included offense of fleeing and attempting to elude.  He exhausted this claim by raising it in his Rule 3.850 motion.  Ex. N at 25-27.  The circuit court denied this claim.  Id. at 42-43.  The state appellate court affirmed.  Ex. Q.

This claim has no merit.  The prosecutor, in closing argument, told the jury that the judge would give instructions on lesser included offenses.  Ex. F at 588-90.  He explained:

> Now, members of the jury, the court will instruct you as to what they call lesser included offenses.  Basically what each one of those offenses are are crimes where elements are not included.  But the judge will tell you that you are to find and you are to return a verdict on the crime, the highest crime charged that the State's proven.

Id. at 588.  The prosecutor argued that the state had proven the highest crime charged beyond a reasonable doubt.  Id. at 589.  He urged the jury to find that the state proved the highest crime

charged: fleeing or attempting to elude a law enforcement officer.
Id.

The record shows that the court did instruct the jury on the
main and lesser included offenses.  Id. at 629-633.  Within the
charge, the court specifically instructed:

> In considering the evidence you should
> consider the possibility that although the
> evidence may not convince you that the
> defendant committed the main crimes of which
> he is accused, there may be evidence that he
> committed other acts that would constitute
> lesser included crimes.  Therefore, if you
> decide that the main accusations have not been
> proved beyond a reasonable doubt, then you
> will next need to decide if the defendant is
> guilty of any lesser included crime.  The
> lesser included crime indicated in the
> definition of fleeing to elude a law
> enforcement officer are fleeing to elude under
> one statute and fleeing to elude under a
> second statute.

Id. at 631.

In addressing the claim of prosecutorial misconduct, the
circuit court found that "[a]ny misimpression left by the
prosecutor's statements was corrected by the judge's instructions."
Ex. N at 42-43.  Thus, the court concluded that the record refuted
the Petitioner's claim that the prosecutor's comments deprived him
of a fair and impartial trial.  Id.  Finally, finding that
Petitioner based his claim of jury confusion on mere speculation,
the court rejected Petitioner's claim of prosecutorial misconduct
and denied relief.  The 1st DCA affirmed.  Ex. Q.

As noted by Respondents, the prosecutor is entitled to offer the jury his view of the evidence presented. Response at 42. In doing so, the prosecutor has wide latitude in asking the jury to draw all logical inferences from the evidence presented. _Id_. Viewing the prosecutor's arguments along with the court's instructions, the jury was not improperly misled. As such, Petitioner is not entitled to habeas relief.

Deference under AEDPA should be given to the state court's decision. Petitioner raised the issue, and the appellate court affirmed. The state court's adjudication of this claim is not contrary to or an unreasonable application of constitutional law, or based on an unreasonable determination of the facts. Therefore, Petitioner is not entitled to habeas relief on this ground.

### G. Ground Seven

In his seventh ground, Petitioner raises another claim of ineffective assistance of trial counsel. Petitioner claims his counsel was ineffective for failure to introduce evidence to the jury that may have allowed for acquittal. Petition at 39. He raised this ground in his Rule 3.850 motion. Ex. N at 27-31. The circuit court rejected this claim, and the appellate court affirmed. _Id_. at 43-44; Ex. Q.

Again, the circuit court applied the _Strickland_ standard to the Petitioner's claim of ineffectiveness of counsel. Ex. N at 39-40. After applying this standard, the court found that Petitioner failed to satisfy the prejudice prong. The court opined:

- 24 -

> The Defendant has failed to allege
> sufficiently that, but for the photographs,
> there was a reasonable probability that the
> result of the proceeding would have been
> different absent the deficient performance.
> In this case, the State proved the Defendant's
> guilt by his attempted escape and his
> admissions to the police and Mr. Brown.
> Additionally, the victim, Mr. Thigpen,
> identified the Defendant as his assailant. In
> light of this, the record conclusively refutes
> the Defendant's allegations that he was
> prejudiced by the absence of the photographs
> from the record. It is improbable that, but
> for the photographs, there would have been a
> different result with the photographs
> available to the jury. No relief is
> warranted.

Ex. N at 44 (citations and internal quotations omitted).

The record shows that counsel referenced photographs of the interior of the house to show that the perpetrator did not take the contents of the victim's home. But, counsel did not introduce these photographs into evidence. The jury inquired about the photographs, but since they had not been admitted into evidence, the court did not send the photographs back to the jury.

The record reflects that the prosecutor did not contend that contents of the house were taken, other than the key to the victim's car. The prosecutor argued in closing about the robbery: "[t]he judge will tell you that [the] State must prove that Byron Spencer took keys, car keys from the person or custody of John Thigpen." Ex. F at 579. With respect to burglary, the prosecutor said that Petitioner had the intent to commit an offense inside the

house because he was after money, decided to take the car keys, and took the car keys. Id. at 583.

Even assuming *arguendo* counsel's performance was deficient, Petitioner has not established prejudice, failing to meet Strickland's prejudice prong. Ex. N at 44. Petitioner has failed to show "that it was 'reasonably likely' that, but for counsel's deficient performance, the result of the proceeding would have been different." Stoddard v. Sec'y, Dep't of Corr., 600 F. App'x 696, 709 (11th Cir.) (per curiam) (citation omitted), cert. denied, 136 S.Ct. 114 (2015). As such, ground seven is due to be denied. Petitioner is not entitled to habeas relief and the Petition is due to be denied.

Petitioner is not entitled to relief on ground seven of the Petition, the claim of ineffective assistance of trial counsel. Deference, under AEDPA, should be given to the state court's decision. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. In sum, ground seven, Petitioner's claim of ineffective assistance of counsel, is due to be denied.

### H. Ground Eight

In his eighth ground, Petitioner claims that his convictions and sentences for armed robbery and grand theft violate the proscription against double jeopardy. Petition at 44. In the Petition, Petitioner asserts that "[g]rand theft is a lesser

- 26 -

included offense of Robbery, therefore[,] the court is not lawful when it sentences an accused to sentences arising from the same transaction - because it is double jeopardy." Id. at 46.   He exhausted this claim by raising it in his Rule 3.850 motion in ground eight.   Ex. N at 31-33.   The circuit court denied this ground.   Id. at 44-45.   The 1st DCA affirmed.   Ex. Q.

Of import, the Double Jeopardy Clause "provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.' U.S. Const., Amdt. 5." United States v. Dixon, 509 U.S. 688, 695-96 (1993).   The Clause protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and it protects against multiple punishments for the same offense.   Garrett v. United States, 471 U.S. 773, 777-78 (1985); Brown v. Ohio, 432 U.S. 161 (1977).   It is the protection against multiple punishments for the same offense which is at issue in this case.

Although the Blockburger[v. U.S., 284 U.S. 299 (1932)] same-elements test (inquiring whether each offense contains an element not contained in the other) is a rule of statutory construction barring subsequent punishment or prosecution if the offenses are considered to be the same offense, it is not controlling if there is an apparent indication of contrary legislative intent.   Boler v. State, 678 So.2d 319, 321 (Fla. 1996) (citing Albernaz v. United States, 450 U.S. 333, 340 (1981)).   In this regard, "legislative intent is the dispositive question" when addressing a double

jeopardy issue. Id. (citation omitted). "[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983). See Jones v. Thomas, 491 U.S. 376, 381-82 (1989); Ohio v. Johnson, 467 U.S. 493, 499 (1984) ("the sentencing discretion of courts is confined to the limits established by the legislature").

In Valdes v. State, 3 So.3d 1067, 1069-70 (Fla. 2009) (footnote omitted), the Florida Supreme Court succinctly set forth this concept:

> The most familiar concept of the term "double jeopardy" is that the Constitution prohibits subjecting a person to multiple prosecutions, convictions, and punishments for the same criminal offense. The constitutional protection against double jeopardy is found in both article I, section 9, of the Florida Constitution and the Fifth Amendment to the United States Constitution, which contain double jeopardy clauses. Despite this constitutional protection, there is no constitutional prohibition against multiple punishments for different offenses arising out of the same criminal transaction as long as the Legislature intends to authorize separate punishments. See Hayes v. State, 803 So.2d 695, 699 (Fla. 2001) ("As the United States Supreme Court explained in Brown v. Ohio, 432 U.S. at 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), where multiple punishments are imposed at a single trial, 'the role of the constitutional guarantee against double jeopardy is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments arising from a single criminal act.'"); Borges v. State, 415 So.2d 1265, 1267 (Fla. 1982) ("The Double Jeopardy Clause 'presents no substantive limitation on the legislature's power to

- 28 -

prescribe multiple punishments,' but rather, 'seeks only to prevent courts either from allowing multiple prosecutions or from imposing multiple punishments for a single, legislatively defined offense.'") (quoting State v. Hegstrom, 401 So.2d 1343, 1345 (Fla. 1981)). As we recognized in Gordon v. State, 780 So.2d 17 (Fla. 2001):

> The prevailing standard for determining the constitutionality of multiple convictions for offenses arising from the same criminal transaction is whether the Legislature "intended to authorize separate punishments for the two crimes." M.P. v. State, 682 So.2d 79, 81 (Fla. 1996); see State v. Anderson, 695 So.2d 309, 311 (Fla. 1997) ("Legislative intent is the polestar that guides our analysis in double jeopardy issues...."). Absent a clear statement of legislative intent to authorize separate punishments for two crimes, courts employ the Blockburger test, as codified in section 775.021, Florida Statutes (1997), to determine whether separate offenses exist. See Gaber v. State, 684 So.2d 189, 192 (Fla.1996) ("[A]bsent an explicit statement of legislative intent to authorize separate punishments for two crimes, application of the Blockburger 'same-elements' test pursuant to section 775.021(4) ... is the sole method of determining whether multiple punishments are double-jeopardy violations.") (footnote omitted).

Gordon, 780 So.2d at 19-20 (footnote omitted).

The two statutes at issue are 812.13, Fla. Stat. (count one), and 812.014, Fla. Stat. (count five).[4]   Ex. A at 92.   Count one required proof that Petitioner robbed the victim of his car keys using a firearm inside the victim's home, and count five required proof that the Petitioner, outside of the home, took the victim's property, his car.

Count one of the fourth amended information charged: that "on September 5, 2007, in the County of Duval and the State of Florida, [Petitioner] did carry a firearm, and did unlawfully by force, violence assault, or putting in fear, take money or other property, to-wit: keys, the property of John Thigpen, from the person or custody of John Thigpen, with the intent to permanently or temporarily deprive John Thigpen of the money or other property, and during the commission of the aforementioned robbery the said Byron Jacob Spencer did actually possess a firearm, contrary to the provisions of Section 812.13(2)(a) and 775.087(2)(a)1, Florida Statutes."   Ex. A at 92.

Count five charged "on or between the September 5, 2007 and September 7, 2007, in the County of Duval and the State of Florida, [Petitioner] did knowingly obtain or endeavor to obtain or use a motor vehicle, the property of John Thigpen, with intent to either temporarily or permanently deprive John Thigpen of a right to the property or benefit therefrom, or with the intent to appropriate

---

[4]   Chapter 812 of the Florida Statutes addresses theft, robbery, and related crimes.

- 30 -

the property to his own use or to the use of any person not entitled thereto, contrary to the provisions of Section 812.014(2)(c)6, Florida Statues." Ex. A at 92.

The trial court instructed the jury, in pertinent part:

> To prove the crime of robbery the State must prove the following four elements beyond a reasonable doubt, number one, Byron Spencer took the car keys from the person or custody of John Thigpen; number two, force, violence, assault or putting in fear was used in the course of the taking; number three, the property taken was of some value; number four, the taking was with the intent to permanently or temporarily deprive John Thigpen of his right to the property or any benefit from it.
>
> In the course of the taking means that the act occurred prior to, contemporaneous with or subsequent to the taking of the property. And that the act and the taking of the property constitute a continuous series of acts or events.
>
> In order for a taking of property to be robbery it is not necessary that the person robbed be the actual owner of the property. It is sufficient if the victim has the custody of the property at the time of the offense.
>
> The taking must be by the use of force or violence or by assault so as to overcome the resistance of the victim or by putting the victim in fear so that the victim does not resist. The law does not require that the victim of robbery resist to any particular extent or that the victim offer any physical resistance if the circumstances are such that the victim is placed in fear of death or great bodily harm if he or she does resist. But unless prevented by fear there must be some resistance to make the taking one done by force or violence.
>
> In order for a taking by force, violence or putting in fear to be robbery it is not

- 31 -

necessary that the taking be from the person
of the victim.  It is sufficient if the
property is taken under the actual control of
the victim so that it cannot be taken without
the use of force, violence or intimidation
directed against the victim.

Ex. F at 621-23.

Later on in the instructions, the court charged:

To prove the crime of grand theft auto
the State must prove the following two
elements beyond a reasonable doubt, number
one, Byron Spencer knowingly and unlawfully
obtained, used, endeavored to obtain or
endeavored to use the vehicle of John Thigpen,
number two, he did so with the intent to
either temporarily or permanently deprive John
Thigpen of his right to the property or any
benefit from it.

If you find the defendant guilty of theft
you must determine by your verdict whether the
property taken was a motor vehicle.

Id. at 633.

In denying this ground of the post conviction motion, the

circuit court relied on the Florida Supreme Court's decision in

Hayes v. State, 803 So.2d 695, 697 (Fla. 2001), finding "where

there is geographic and temporal separation in the taking of

separate property, including a motor vehicle, from one victim, the

defendant may be convicted of both armed robbery of that separate

property and grand theft of a motor vehicle without violating the

prohibition against double jeopardy."  See Ex. N at 44-45.  In

Hayes, the Florida Supreme Court first noted that Hayes entered the

victim's residence and robbed the victim of his keys to his motor

vehicle, as well as other household items.  Hayes, 803 So.2d at

704.  The "robbery was complete."  Id.  Thereafter, Hayes exited

the home and stole the motor vehicle.  Id.  The court concluded:

> Although there was only a single victim in
> this case, and there were no intervening acts,
> we find that the robbery of various items from
> inside the residence was sufficiently separate
> in time, place and circumstances from Hayes'
> theft of the motor vehicle parked outside the
> victim's residence to constitute distinct and
> independent criminal acts.

Id.  The court distinguished a case where a motor vehicle was taken

at knifepoint, with the victim immediately outside of his vehicle.

Id.

The circuit court, in denying Petitioner's claim that double

jeopardy principles were violated, looked for evidence of

separation of time, place, or circumstances between the armed

robbery and the grand theft.  Ex. N at 44.  The court found

distinct and independent criminal acts: first, the robbery of the

victim's car keys in the victim's home, and then second, outside

the home, the taking of the motor vehicle.[5]  Id. at 44-45.  The

court found no double jeopardy violation.  Id. at 45.  The 1st DCA

affirmed.

There is a qualifying state court decision and AEDPA deference

is warranted.  The adjudication of the state court resulted in a

decision that involved a reasonable application of clearly

_____

[5] Since there are two or more distinct criminal acts when the
defendant commits a robbery inside the home and takes the victim's
car keys, and then exits the home and takes the vehicle, the
"prohibition against double jeopardy does *not* prohibit multiple
convictions and punishments[.]" Hayes, 803 So.2d at 700.

established federal law, as determined by the United States Supreme
Court. Therefore, Petitioner is not entitled to relief on ground
eight because the state court's decision was not contrary to
clearly established federal law, did not involve an unreasonable
application of clearly established federal law, and was not based
on an unreasonable determination of the facts.

"[R]obbery is not a degree of theft nor is theft a degree of
robbery[.]" McKinney v. State, 66 So.3d. 852, 856 (Fla. 2011) (per
curiam) (citation and internal quotations omitted), cert. denied,
565 U.S. 989 (2011). Each independent crime requires an element of
proof that the other does not, with robbery requiring a show of
force, violence, assault or putting in fear, and grand theft
requiring the property taken be of a certain value, or be an
automobile in this instance. Id. at 857. Separate sentences are
to be imposed for these violations. See Stoddard v. Sec'y, Dep't
of Corr., 600 F. App'x at 703-704 ("In the context of multiple
punishments, the purpose of double jeopardy is simply to ensur[e]
that the total punishment did not exceed that authorized by the
legislature. Therefore, in enforcing the federal double-jeopardy
guarantee, we must examine the various offenses for which a person
is being punished to determine whether, as defined by the
legislature, any two or more of them are the same offense. In
effect, we ask whether the offenses are sufficiently

- 34 -

distinguishable to permit the imposition of cumulative punishment." (footnote, citations and internal quotations omitted)).

The offenses charged in counts one and five constitute two distinct criminal acts, codified in separate statutes. There is not a "single, legislatively defined offense," McKinney, 66 So.3d at 854 (citation and quotation omitted), and one is not wholly subsumed by the other. Id. at 857. Therefore, there is no double jeopardy violation. As such, ground eight is due to be denied.

## I.  Ground Nine

In his ninth and final ground, Petitioner raises a claim of prosecutorial misconduct in informing the jury that Petitioner had consciousness of guilt of a crime that he had committed prior to the fleeing and attempting to elude. Petition at 48. Petitioner raised this ground in his Rule 3.850 motion, Ex. N at 33-35, but the circuit court held that this claim could not be raised in a Rule 3.850 motion. Id. at 45. More particularly, the court said:

> "Because a prosecutorial misconduct claim may and should be raised on direct appeal, it is not a cognizable claim for purposes of rule 3.850." McCray v. State, 933 So.2d 1226, 1227 (Fla. 1st DCA 2006)[.] Also, "[t]o the extent that the allegations challenged the factual basis and sufficiency of the evidence, such claims cannot be raised in a Rule 3.850 motion, especially where (as occurred in the instant case) a direct appeal was taken." Betts v. State, 792 So.2d 589, 590 (Fla. 1st DCA 2001). No relief can be granted on this claim under Rule 3.850.

Ex. N at 45. The 1st DCA affirmed. Ex. Q.

Respondents assert that Petitioner failed to properly exhaust this ground because he did not fairly present it to the state courts. Response at 51. In addressing the question of exhaustion, this Court must ask whether Petitioner's claim was properly raised in the state court proceedings:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." Kelley, 377 F.3d at 1343-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 133 S.Ct. 875 (2013).

There are prerequisites to a federal habeas review. Respondents urge this Court to find that ground nine is procedurally defaulted.   Response at 51-53.   The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, supra, at 747-748, 111 S.Ct. 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ----, ----, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S.Ct. 2546.

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012).

Procedural defaults may be excused under certain circumstances; "[a] petitioner who fails to exhaust his claim is

procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." Lucas, 682 F.3d at 1353 (citing Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999) (per curiam)). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

Petitioner did not fairly present this federal constitutional claim to the state courts. Any further attempts to seek post conviction relief in the state courts on this ground will be unavailing. He has procedurally defaulted this claim. Therefore, he must demonstrate cause and prejudice. First, Petitioner must demonstrate cause for his default. This cause has to result from an objective factor external to the defense, and that factor had to prevent Petitioner from raising his constitutional claim which cannot be fairly attributable to his own conduct. Wright v. Hopper, 169 F.3d 695, 706 (11th Cir.), cert. denied, 528 U.S. 934 (1999) (citation omitted). In order for Petitioner to establish prejudice, he must show that the alleged errors actually and substantially disadvantaged his defense resulting in a denial of fundamental fairness. Id. (citation omitted).

Here, Petitioner has made no attempt to show cause and prejudice. Notice (Doc. 14). Upon review, the Court finds that Petitioner has not shown cause and prejudice. Additionally, he has failed to show that failure to address this claim on its merits would result in a fundamental miscarriage of justice. The Court finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence.

Ground nine is unexhausted and procedurally defaulted. The fundamental miscarriage of justice exception is inapplicable to the case at bar. Thus, Petitioner is barred from pursuing ground nine in federal court.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[6] Because this Court

---

[6] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of March, 2017.

_____

BRIAN J. DAVIS
United States District Judge

sa 2/23
c:
Byron Jacob Spencer
Counsel of Record

_____

encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.